# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MICHAEL W. PAGUE | ) | Case No. 3:01-bk-32061 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| MICHAEL W. PAGUE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 3:09-ap-00071 |
| | ) | |
| JUNE P. HARSHMAN, and | ) | |
| WILLIAM M. SCHILDT | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Michael W. Pague (the "Debtor") filed this adversary proceeding, seeking damages for violations of the discharge injunction against June P. Harshman and Ms. Harshman's attorney, William M. Schildt.[1] Ms. Harshman holds a promissory note signed by the Debtor and the Debtor's spouse on January 24, 1995. After the Debtor received his Chapter 7 discharge on September 13, 2001, Mr. Schildt represented Ms. Harshman in suing to recover the debt owed on the note.

### I. BACKGROUND

The Debtor filed his Chapter 7 bankruptcy petition on June 18, 2001. On September 13, 2001, the court entered the Debtor's Chapter 7 discharge order. Ms. Harshman was listed as a

---

[1] The Debtor had also asserted a cause of action against Ms. Harshman and Mr. Schildt for violation of the automatic stay, but abandoned that cause of action at trial.

1

creditor in the case and received notice of the bankruptcy petition on June 20, 2001.  The Debtor's
Schedule A lists a $45,000.00 interest in residential real estate, and Schedule D lists a $37,500.00
mortgage to "Robert & June Harshman"[2] against the real estate.  Ms. Harshman received notice of
the Debtor's Chapter 7 discharge on September 15, 2001.

Post-discharge, the Debtor executed a notarized Property Settlement Agreement with his
spouse, Alba Sue Pague, on February 27, 2002, as part of a divorce proceeding.  The Property
Settlement Agreement required the Debtor to cure the mortgage arrears owed to Ms. Harshman and
to pay the continuing obligations under the mortgage note until the real estate was sold.  On
December 10, 2003, title to the real estate was conveyed to Akinola A. Ogundepo.

Proceeds from the sale to Mr. Ogundepo were not paid over to Ms. Harshman in satisfaction
of her note at the closing.  Thus, on April 21, 2004, Mr. Schildt, filed, on behalf of Ms. Harshman,
a complaint against the Debtor, and by then, his former spouse, Alba Sue Pague, in the Circuit Court
for Washington County, Maryland, demanding payment of the mortgage note in full on the grounds
that the note's due-on-sale clause had been triggered by the sale of her collateral. The state court
granted Ms. Harshman's motion for summary judgment and entered a $37,149.52 judgment against
the Debtor and Alba Sue Pague on August 11, 2004.

Shortly after obtaining summary judgment against the Debtor, the Debtor's bankruptcy
counsel filed a suggestion of bankruptcy in the state court proceeding, and sent a letter dated
September 28, 2004, to Mr. Schildt explaining that the Debtor's obligation under the note to Ms.
Harshman had been discharged.  Mr. Schildt responded with two letters.  The first letter, dated
October 15, 2004, explained that the Debtor should have raised his bankruptcy discharge as a defense
to Ms. Harshman's state court complaint.  The second letter makes the following argument:

> Since writing my letter of October 15, 2004, to you, it has occurred to me that Mr.
> Pague reaffirmed the debt to my client in the Property Settlement Agreement he
> entered into with his wife in February, 2002. . . .  My client is a third-party
> beneficiary of the promises made in section 5 of the Agreement.  For this and the
> reason stated in my letter of October 15, it does not appear to me that the judgment
> entered against Mr. Pague is in error.

(Pl.'s Ex. 10.)  The Debtor's bankruptcy counsel responded to Mr. Schildt in a letter dated November

---

[2] Robert Harshman died on March 25, 2004.

24, 2004, reasserting that collecting on a discharged debt violated the Bankruptcy Code and could be grounds for contempt.

On March 27, 2006, Mr. Schildt obtained for Ms. Harshman a declaratory judgment in state court, which determined that her lien survived the sale to Mr. Ogundepo. Eventually, Ms. Harshman enforced her lien through foreclosure; and on November 21, 2007, $34,491.62 of the proceeds from a foreclosure sale were paid over to Harshman in satisfaction of her lien. On account of the delay between entry of the judgment against the Debtor and the foreclosure sale, the balance on the judgment had accrued to $49,332.52, leaving a deficiency balance of $16,278.57 as of November 10, 2008.

Throughout 2008 and through January 2009, Schildt continued collection efforts against the Debtor to recover the balance owed on Ms. Harshman's judgment. During that time, the Debtor retained another attorney, who sent letters to Mr. Schildt, demanding that he cease attempts to collect on Ms. Harshman's note. Mr. Schildt sent responses, reasserting his understanding that his actions were justified on the grounds that the Debtor undertook a post-discharge obligation to pay Ms. Harshman pursuant to the Property Settlement Agreement.

Despite warnings from the Debtor's attorneys, on January 21, 2008, Mr. Schildt served the Debtor with interrogatories in aid of enforcement of judgment. On March 19, 2008, he filed a motion to compel answers to interrogatories, which the state court granted. As a result of the Debtor's failure to comply with the state court's order to answer Mr. Schildt's discovery request, Mr. Schildt initiated a petition for contempt on May 2, 2008. In addition to urging a finding of contempt and the award of attorney fees and costs, the petition sought the incarceration of the Debtor until he purged himself of contempt. The court issued the Debtor a show cause order setting a hearing date on July 11, 2008, and stating that a failure by the Debtor to appear would result in a warrant for his arrest. However, despite the fact that the Debtor never answered Mr. Schildt's interrogatories, no contempt judgment was entered in the state court proceedings. On November 10, 2008, Mr. Schildt filed a request for an oral examination of the Debtor in aid of enforcement of Ms. Harshman's judgment. On January 23, 2009 an oral examination of the Debtor was conducted by Mr. Schildt before Judge M. Kenneth Long for the Washington County Court.

On July 10, 2009, the Debtor commenced this adversary proceeding against Ms. Harshman

3

and Mr. Schildt for violating the Debtor's discharge injunction. Ms. Harshman failed to answer the complaint, and at trial the Debtor made an oral motion for entry of default and default judgment against Ms. Harshman. The court granted the request for entry of default, but, in order to avoid the risk of inconsistent judgments, deferred ruling on the request for default judgment against Ms. Harshman until it reached a decision as to Mr. Schildt's liability.

## II. DISCUSSION

Based on the evidence presented to the court at trial, the court finds that the Debtor has shown, by clear and convincing evidence, that Ms. Harshman and Mr. Schildt have violated the Debtor's discharge injunction and the court will enter relief in the Debtor's favor.

### A. Contempt of the Discharge Injunction

A Chapter 7 discharge under 11 U.S.C. § 727(a) discharges a debtor from all pre-petition claims, except certain categories of claims deemed excepted from discharge. Section 524(a) of the Bankruptcy Code implements the Chapter 7 discharge and operates as an injunction that prevents, among other things, the "continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." § 524(a)(2).

No private right of action exists for a creditor's violation of the discharge injunction. *E.g.*, *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510 (9th Cir. 2002) (holding that Congress did not intend to create a private right of action under § 524 and that such a private right of action should not be inferred); *Johnston v. Telecheck Servs. (In re Johnston)*, 362 B.R. 730, 739 (Bankr. N.D.W. Va. 2007) ("No evidence is present in § 524's legislative history to indicate the Congress intended to provide debtors with a private right of action."). A violation of the discharge injunction is punished by contempt of court. *E.g., ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)*, 450 F.3d 996, 1007 (9th Cir. 2005) ("A party who knowingly violates the discharge injunction can be held in contempt . . . ."). Civil contempt for a discharge injunction violation requires a willful violation. *Almond v. Ford Motor Credit Co. (In re Almond)*, 2007 Bankr. LEXIS 1595, at * 18 (Bankr. M.D.N.C. May 7, 2007). "Determining if a party has committed civil contempt involves essentially only consideration of whether the party knew about a lawful order and whether he complied with it." *Burd v. Walters (In re Walters)*, 868 F.2d 665, 670 (4th Cir. 1989); *see also In re Dendy*, 396 B.R. 171, 178 (Bankr. D.S.C. 2008) (stating that willfulness in the § 524 context is "proved by showing

4

that the creditors knew that the discharge injunction was invoked and intended the act which violated the injunction."). Moreover, the state of mind of the party at the time the party violates the court's order is irrelevant as to a finding of contempt. *In re Cherry*, 247 B.R. 176, 187 (Bankr. E.D. Va. 2000) ("In a civil contempt proceeding, the state of mind with which the contemnor violated a court order is irrelevant and therefore good faith, or the absence of intent to violate the order, is no defense."). The elements of contempt must be shown by clear and convincing evidence. *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000).

There is no dispute in this case as to the validity of the court's discharge order on September 13, 2001, or as to whether the Debtor's liability on the note to Ms. Harshman was discharged by that order. Thus, the questions before the court in determining whether there has been a violation of the discharge injunction by the Defendants are: (1) whether and at what point did Ms. Harshman and Mr. Schildt obtain knowledge of the discharge order, and (2) whether the acts of Ms. Harshman and Mr. Schildt were in willful violation of the discharge order.

### 1. Violations of the Discharge Injunction

Section 524(a)(2) establishes an injunction for the benefit of a debtor that prohibits "the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). The discharge also voids any judgment obtained on a discharged debt. 11 U.S.C. § 524(a)(1).

#### a. Post-Discharge Law Suit

Clearly, the discharge injunction prohibits post-discharge lawsuits to recover discharged claims. *Martin v. Avco Fin. Servs. (In re Martin)*, 157 B.R. 268, 274 (Bankr. W.D. Va. 1993) (stating that an action *in rem* to enforce a pre-petition lien does not violate the discharge injunction as long as the action does not subject the debtor to *in personam* judgment on a discharged debt); 4-524 *Collier on Bankruptcy* ¶ 524.02[2][a] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2009) (same). Here, the complaint against the Debtor on April 21, 2004, seeks "judgment against the Defendants, Michael W. Pague and Alva Sue Pague, jointly and severally. . . ." (Pl.'s Ex. 4 at 3.) The basis for the complaint is the Debtor's signature on a promissory note dated January 17, 1995. Thus, the state court complaint was prohibited by the discharge injunction because it was a post-discharge act to recover a discharged, pre-petition debt as a personal liability of the Debtor.

5

Consequently, the judgment that resulted in the state court proceeding is void under § 524(a)(1).

Mr. Schildt raises the defense that the February 27, 2002 Property Settlement Agreement between the Debtor and the Debtor's spouse created a new, post-discharge obligation of the Debtor to Ms. Harshman. Even assuming, without deciding, that the Property Settlement Agreement created post-discharge obligations from the Debtor to Ms. Harshman, the obligations incurred under the Property Settlement agreement are, nevertheless, distinct from the Debtor's obligations under the note.

The state court complaint does not seek to recover on the Debtor's post-discharge promises to maintain the mortgage payments until the house was sold, as set forth in the Property Settlement Agreement. Instead, the complaint sets forth the Debtor's personal liability on the due-on-sale clause under the January 17, 1995 promissory note, and prays for judgment to establish the Debtor's joint and several liability with his former spouse on the balance of the note. The Debtor's liability on the note, however, was discharged on September 13, 2001, and, thus, any judgment on the note would have been void *ab initio*. *Hamilton v. Herr (In re Hamilton)*, 540 F.3d 367, 374 (6th Cir. 2008). The complaint makes no reference to potential post-discharge obligations, and neither pleads nor alleges any cause of action based thereon, whether founded upon a third-party beneficiary obligation or another theory. Without notice that Ms. Harshman was seeking to recover on a post-discharge obligation, the Debtor was not obligated to respond to Ms. Harshman's state court complaint. *Id.* at 373 (". . . [A] debtor need not raise his discharge in bankruptcy as an affirmative defense, because thanks to § 524(a) such an affirmative defense is unnecessary and has been since 1970.") (internal quotation marks omitted). Mr. Schildt's third-party beneficiary defense to his conduct in attempting to collect upon a discharge debt is merely a *post hoc* rationalization and is rejected.

### b. Post-Judgment Proceedings

Once judgment was obtained, enforcement proceedings were carried out against the Debtor. Namely, on January 21, 2008, the Debtor received interrogatories in aid of enforcement of judgment; on March 19, 2008, Ms. Harshman filed a motion to compel answers to interrogatories; on May 2, 2008, she filed a petition for contempt; on November 10, 2008 she made a request for an oral examination; and on January 23, 2009 she conducted an oral examination of the Debtor.

While Ms. Harshman was not prohibited by the discharge injunction in enforcing her lien,

6

*in rem*, she had already received the foreclosure proceeds from the sale of her collateral by November 21, 2007.  Thus, the actions taken through her agent, Mr. Schildt, in pursuit of the Debtor between January 21, 2008 and January 23, 2009, were to recover on the personal liability of the Debtor under the judgment.  Consequently, those actions violated of the discharge injunction.[3]  *In re Almond*, 2007 Bankr. LEXIS 1595 at * 21 (*in rem* lien enforcement actions are not violations of the discharge injunction); *In re Martin*, 157 B.R. at 275 ("[W]hile seeking a Warrant in Detinue alone for the recovery of property does not run afoul of the [discharge injunction], seeking and obtaining a judgment for the collateral's alternate value and then subsequently garnishing the debtor's wages in satisfaction thereof is the type of action to which this Debtor should not have to respond and which the Congress has sought to avoid.").

### c. Post-Discharge Collection Calls

The Debtor testified at trial that Mr. Schildt made approximately four telephone calls during 2007-08 to demand payment, post-discharge.  On cross-examination, however, the Debtor admitted that he had never met Mr. Schildt until January 2009, and was not sure that it was Mr. Schildt that made the alleged calls.  Further, Mr. Schildt testified that he never made such calls, and, moreover, had never met the Debtor before the January 23, 2009 oral examination.

Civil contempt must be shown by clear and convincing evidence.  *Ashcraft*, 218 F.3d at 301.  The Debtor failed to establish a foundation for his knowledge that Mr. Schildt was the one who made the phone calls he described at trial.  Thus, he has failed to show by clear and convincing evidence that Mr. Schildt made such calls.

However, the court finds that although the Debtor was unable to sufficiently establish that

---

[3] At trial, Mr. Schildt demonstrated what can only be described as either a disconcerting lack of appreciation for the basic precepts regarding the strictures imposed by the discharge injunction, or an astonishing lack of familiarity regarding the contents of the judgment he was trying to enforce.  At one point, in response to a question by Debtor's counsel as to why he continued to pursue the Debtor despite being told by two different attorneys that to do so would violate the discharge injunction, Mr. Schildt responded by saying that, "They are telling me that the discharge prevents it, not that he doesn't have any assets."  To be fair, Mr. Schildt contends that he was collecting on an obligation different from that which had been discharged.  But, as has been shown, there was no other judgment to enforce against the Debtor other than the one relating to his obligation under the promissory note; a debt which was discharged.

the harassing phone calls seeking collection on the discharged debt emanated from Mr. Schildt, the Debtor's testimony was both credible and sufficient to show that he received the calls from a source obviously familiar with the debt, and that, regardless of the source of the identity of the caller, the calls caused the Debtor great anxiety and distress.

### 2. Willfulness & Knowledge of the Discharge Order

To determine whether Ms. Harshman and/or Mr. Schildt are liable for civil contempt in violating the discharge injunction, the court must decide whether and at what point they received notice of the Debtor's discharge, and whether their violations were willful – i.e., whether they intended the actions which violated the injunction.

#### a. Agency of Mr. Schildt

Ms. Harshman carried out her litigation against the Debtor through her attorney, Mr. Schildt. Because attorneys are agents for their clients, the court must decide whether and to what extent the acts of Mr. Schildt are attributable to her.

The general rule of *respondeat superior*, recognized in both Maryland and West Virginia, provides that a principal is liable for the wrongful acts of its agent within the scope of the agent's authority. *Southern Mgmt. Corp. v. Taha*, 836 A.2d 627, 638 (Md. 2003); *Jarvis v. Modern Woodmen of Am.*, 406 S.E. 2d 736, 743 (W. Va. 1991). The agent and principal may be held jointly and severally liable for the wrongful acts of the agent. *Southern Mgmt. Corp.*, 836 A.2d at 638. No requirement exists that an attorney must also be a creditor for that attorney to be held accountable for violations of the discharge injunction. *E.g.*, *Vazquez v. Sears, Roebuck & Co. (In re Vazquez)*, 221 B.R. 222, 231 (Bankr. N.D. Ill. 1998) ("A creditor and its attorney are jointly and severally liable for their violations of the discharge injunction because under general principles of agency law, an agent whose tortious conduct renders the principal liable is also liable for his own tortious acts.").

Here, at all relevant times, Mr. Schildt represented Ms. Harshman as her attorney. In particular, the acts that the Debtor argues were contumacious were litigation acts that Mr. Schildt pursued under the authority given to him by Ms. Harshman. Because Mr. Schildt's acts in this case were within his representation of Ms. Harshman, his acts are attributable to Ms. Harshman under the doctrine of *respondeat superior*. Further, Mr. Schildt is jointly and severally responsible for his own contumacious conduct.

8

### b. Notice

Ms. Harshman received notice of the discharge on September 15, 2001.  A certificate of service shows that on September 15, 2001, Ms. Harshman was served with a copy of the court's discharge order of September 13, 2001.  Thus, Ms. Harshman had knowledge of the discharge injunction from the time she authorized the state court complaint on April 21, 2004, and at all times thereafter.  Further, Ms. Harshman authorized the filing of the state court complaint and the subsequent enforcement proceedings.  Because she had knowledge of the Debtor's discharge at the time she carried out intentional acts in violation of the discharge, her violations were willful.

Mr. Schildt, however, is not included in the list of creditors who received service of the discharge order.  And while principals are imputed with the knowledge that their agents obtain within the scope of their authority, *Anderson v. General Casualty Insurance, Company*, 935 A.2d 746, 753 (Md. 2007); *Great E. Refining Corp. v. Shank*, 127 S.E 922 (W. Va. 1925), knowledge of the principal cannot similarly be imputed to the agent.  *E.g.*, *S.O.G.-San Ore-Gardner v. Missouri P. R. Co.*, 658 F.2d 562, 567 (8th Cir. 1981) ("[I]t is well settled that an agent may rely upon the representations of his principal and that the principal's undisclosed knowledge is not imputed to him.").  Mr. Schildt was first notified of the Debtor's Chapter 7 discharge by the suggestion of bankruptcy filed in the state court proceedings.  Mr. Schildt received service of the suggestion of bankruptcy on September 28, 2004, and the suggestion included a copy of the discharge order and pertinent schedules showing that Ms. Harshman's note was covered by the discharge.  (Pl.'s Ex. 8.) Thus, Mr. Schildt lacked knowledge of the discharge injunction during the course of obtaining a judgment for Ms. Harshman.  But he had such knowledge at the time he carried out, on behalf of Ms. Harshman, state court litigation from January 21, 2008 through January 23, 2009.  The initiation of proceedings in state court required intentional acts by Mr. Schildt.  Because Mr. Schildt had knowledge of the Debtor's discharge at the time he made filings and appearances in pursuit of the Debtor from January 21, 2008 through January 23, 2009, his violations during that period were willful.

Mr. Schildt's feeble contentions that, in effect, neither of the Debtor's attorneys were able to persuade him that his third-party beneficiary defense wasn't tenable misses the mark by a wide margin.  The burden was not on the Debtor or his counsel to prove to Mr. Schildt that the debt was

discharged; rather, the burden was upon Mr. Schildt to determine if the debt had been discharged. *E.g.*, *Cherry*, 247 at 189 n.20 ("The prime intent of the discharge injunction is to give the debtor a fresh start. This intent requires the burden of ascertaining whether a debt is discharged to fall on the creditor."). Likewise, Mr. Schildt's attempt to characterize his intention with the Debtor's attorneys as nothing more than an honest disagreement about a legal proposition belies the gravity of the situation. From the moment he was informed of the Debtor's discharge in September 2004, Mr. Schildt moved forward at every step thereafter in peril of being found in violation of the discharge injunction. He was aptly and adequately informed of its existence, and the potential consequences for its violation. It was not incumbent upon the Debtor, or his counsel, to dissuade him further.

Because Mr. Schildt acted as Ms. Harshman's agent throughout the course of the state court litigation from January 21, 2008 through January 23, 2009, and because those acts were within Mr. Schildt's scope of authority as Ms. Harshman's agent, Mr. Schildt's willful acts are imputed to her under the doctrine of *respondeat superior*.

## B. Sanctions

Once a violation of the discharge injunction has been established, a bankruptcy court is empowered to impose remedial sanctions, and to ensure future compliance with the court's order of discharge. *In re Baker*, 390 B.R. 524, 531 (Bankr. D. Del. 2008); *In re Workman*, 392 B.R. 189, 195 (Bankr. D.S.C. 2007); *In re Latanowich*, 207 B.R. 326, 333 (Bankr. D. Mass. 1997). In effectuating such purpose, the court has broad discretion to fashion orders requiring, among other things, the contemnor to pay for costs associated with vindicating the court's order. *Workman*, 392 B.R. at 195.

### 1. Remedial Relief

The Debtor asserts that, as a result of the above discharge violations by Ms. Harshman and Mr. Schildt, he suffered damages including, emotional distress and costs connected with protecting his interests.

An order for civil contempt may not award recovery to the plaintiff for emotional distress according to the prevailing law in the Fourth Circuit.[4] *Walters*, 868 F.2d at 669-670 (vacating an

---

[4] For a cogent contrasting view emanating from a court within the Third Circuit, see Bankruptcy Judge Eric Frank's discussion of the issue in the case of *In re Meyers*, 344 B.R. 61, 66-68 (Bankr. E.D. Pa. 2006).

award for emotional distress damages as a result of civil contempt); *In re Original Barefoot Floors of Am., Inc.*, 412 B.R. 769, 776 (Bankr. E.D. Va. 2008) (holding that in a civil contempt proceeding "there is no authority to award damages for emotional distress"); *In re Bock*, 297 B.R. 22, 29 (Bankr. W.D.N.C. 2001) (same). Thus, although the court heard credible and persuasive evidence from the Debtor regarding the emotional distress caused by the conduct of the Defendants, and would make an award to the Debtor on that basis if it could, it is compelled to deny relief in that regard by virtue of the law of this Circuit.

The court takes notice of the fact that the Debtor was forced to expend his time appearing at trial, meeting with attorneys, and attending the state-court oral examination. While lost wages and travel expenses would be otherwise recoverable, the Debtor presented no quantifiable evidence in that regard. The Debtor presented no evidence as to the level of his pay or the amount of time he expended pursuing relief from discharge injunction violations. However, while the precise amount of compensatory damages is indeterminable based upon the record, the court finds that, due to the clear violations of the discharge injunction by the Defendants, and the obvious effort required of the Debtor to vindicate it, he is entitled to a compensatory award. In that regard, the Debtor is entitled to a reasonable sum, which the court finds to be $500, for lost time, travel, and other incidental expenses that were incurred by him in responding to the Defendants' unlawful collection activities, and in ultimately securing the benefit of his discharge. *In re Mickens*, 229 B.R. 114, 118-19 (Bankr. W.D. Va. 1999); *Latanowich*, 207 B.R. at 337.

**2. Attorneys' Fees and Costs**

The Debtor's complaint demands an award for attorneys fees and costs. At trial, the Debtor presented the court with an invoice for attorneys' fees totaling $ 18,062.00, which accounted for a total of 67.9 attorneys' hours that had accrued in his case before the trial date. (Pl.'s Ex. 6.) The earliest date on which the Debtor's legal fees began to accrue in relation to this case is November 26, 2008. At that date, both Mr. Schildt and his principal, Ms. Harshman, had knowledge of the Debtor's discharge. Consequently, the fees are attributable to the discharge violations by Mr. Schildt as Ms. Harshman's agent. Thus, both Mr. Schildt and Ms. Harshman are jointly and severally liable for the Debtor's attorneys' fees incurred in protecting his fresh start.

The amount of the fees charged to the Debtor, however, is slightly out of proportion with the

11

complexity of his case.  The case presented a relatively simple set of facts, no pre-trial motions or discovery, and only two witnesses.  The main reason for the 18.3 hours of legal research billed to the Debtor is his attorneys' inexperience with bankruptcy law.  Seth D'Atri, the associate who handled much of the research in the case, testified that he was largely unfamiliar with bankruptcy law before he started working on this case.  Mr. D'Atri testified that the firm charges his time at $ 240.00 per hour.  The court finds that the rate of $ 240.00 per hour is too high for the remedial research that was required in this case.  A more appropriate rate is $ 150.00 per hour, which the court will apply to the time Mr. D'Atri expended conducting legal research, thus, resulting in a total of $ 2,745.00 for 18.3 hours of legal research.

Mr. D'Atri also testified that he traveled for 2.7 hours to represent the Debtor at the state court oral examination.  The court finds that a reasonable and appropriate rate for travel time is $ 120.00 per hour, which results in a total of $ 324.00 for travel time.  Mr. D'Atri's $ 240.00 rate will apply to the remaining 3.3 hours of time billed on Mr. D'Atri's invoice.  Thus, the amount awarded for Mr. D'Atri's time totals $ 3,861.00.

For all other attorneys who billed time in this matter, the firm charged $ 275.00 per hour. The court finds that for this case in this District a more appropriate and reasonable rate is $ 250.00 per hour, which the court will apply to all attorney time other than Mr. D'Atri.

In addition to the 67.9 hours billed, the trial in this matter lasted approximately 5.5 hours. While two attorneys appeared on behalf of the Debtor at the trial, the court finds that only one attorney was necessary to try the case.  Further, the court ordered post-trial briefs in this case.  The Debtor's attorney complied with the order, and presented an invoice showing that the Debtor accrued an additional 2.7 hours of work in preparing the Debtor's post-trial brief.  Thus, the hours for all attorneys other than Mr. D'Atri totals 51.8.  Applying the $ 250.00 per hour rate to that figure totals $ 12,950.00.  The combined attorneys' fee award amounts to $ 16,811.00, which the court finds to be reasonable and necessary.

In addition to attorneys' fees, the court will grant the Debtor an award for costs, which in this case total $ 250.00 for the filing fee incurred in opening this adversary proceeding.

### 3. Punitive Sanctions

Punitive sanctions "are simply another mechanism by which the court enforces its orders."

*Mickens v. Waynesboro Dupont Employees Credit Union, et al. (In re Mickens)*, 229 B.R. 114, 119 (Bankr. W.D. Va. 1999). "Punitive sanctions, though imposed as punishment after the fact, nonetheless enforce court orders by their very availability and the threat of their imposition for violations of such orders." *Id.* (internal citations and quotation marks omitted). An award for punitive damages may be appropriate where it is shown that "a creditor's actions are egregious or malevolent." *Workman,* 392 B.R. at 196. Malevolent intent and egregious conduct requires a finding "beyond willfulness or deliberation and more closely resembling a specific intent to violate the discharge injunction." *In re Cherry*, 247 B.R. at 189.

Here, while the court has found unambiguous violations of the discharge injunction, the Debtor failed to show at trial that the conduct of Ms. Harshman rises to the level of egregious or malevolent behavior. The record as developed shows few acts, if any, taken by her except through her legal counsel.

As for Mr. Schildt, the Debtor strongly urged the court at trial to impose punitive damages as a result of his conduct. In order to do so, the court must find that Mr. Schildt's actions were egregious or malevolent in nature. However, after thorough reflection, the court is unable to say that his behavior comported with that standard. Although Mr. Schildt's actions clearly violated the discharge injunction, the evidence is insufficient to establish that he acted egregiously or with malevolent intent. His pursuit of the discharged debt occurred only through legal process and proceedings. While he pursued collection based upon a now discredited theory, he did so openly and upon engagement, at least in part, with the Debtor's various attorneys. Mr. Schildt continued to pursue the Debtor at the risk of incurring contempt liability for himself and his client. That has now been established, and the costs imposed by this court as a result are substantial. Mr. Schildt and his client are unlikely to repeat any offense against the Debtor, thus, the award of any additional monetary sanctions cannot be correlated with an attempt to deter future conduct by either of them. *In re Cherry*, 247 B.R. at 190. Accordingly, the court will deny the Debtor's request for punitive damages.[5]

---

[5] The decision to decline the prayer for punitive damages should not be taken as a signal that this court will not award punitive damages in instances where violations of the discharge injunction are established. However, by their very nature, such damages are fact specific, and must be considered

13

## IV. CONCLUSION

For the above-stated reasons, the court concludes that the Defendants' actions in obtaining and pursuing enforcement of a state court judgment on a discharged debt violated the discharge injunction and that the violations were willful.  The court will enter a separate order pursuant to Fed. R. Bankr. P. 7058 that renders Mr. Schildt and Ms. Harshman jointly and severally liable for $ 500 in payment to the Debtor for his lost time and inconvenience in enforcing the discharge injunction, $ 16,811 in attorneys fees incurred in enforcing the discharge injunction, and $ 250.00 in costs. Additionally, the state court judgement will be ordered void pursuant to 11 U.S.C. § 524(a)(1), and Mr. Schildt will be ordered to release Ms. Harshman's state court judgment against the Debtor.

---

on a case-by-case basis.  Here, the court found clearly established violations.  Indeed, the conduct of Mr. Schildt came perilously close to crossing the threshold justifying the imposition of punitive sanctions.  Among other things, the evidence showed a troubling lack of appreciation on his part for the vital precepts of bankruptcy law.  Nevertheless, within the confines of this case, the court is unable to say that his conduct demonstrated the degree of perniciousness required for the issuance of punitive damages.

14